PENELOPE MCGILL, PLAINTIFF IN ERROR, *v.* JOSEPHINE H. ARMOUR.

Where a creditor brought an action against an executrix in the Circuit Court of the United States for Louisiana, and the petition only averred that the petitioner was shown to be a creditor by the accounts in the State court which had jurisdiction over the estates of deceased persons, and then proceeded to charge the executrix with a devastavit, and exceptions were taken to the petition as insufficient, these exceptions must be sustained.

The petition should have gone on to allege further proceedings in the State court analogous to a judgment at common law, as a foundation of a claim for a judgment against the *executrix de bonis propriis,* suggesting a devastavit.

The laws of Louisiana provide for compelling the executrix to file a tableau of distribution, which is a necessary and preliminary step towards holding the executrix personally responsible. The petition, not having averred this, was defective, and the exceptions must be sustained.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Louisiana.

As the decision turned upon a question of pleading, it is proper to insert the petition, and the exceptions which were taken to it, by way of demurrer.

The petition was as follows.

"To the Honorable the Judges of the Circuit Court of the United States, held in and for the District of Louisiana, the petition of Penelope McGill respectfully shows:

"That she is a resident and citizen of the State of Mississippi.

"That Josephine Hurd Armour is a citizen of the State of Louisiana, resident in New Orleans.

" That Josephine Hurd Armour is indebted to, and became liable to pay to, your petitioner the sum of $ 7,510.66, with eight per cent. per annum interest thereon, from and after the 6th day of June, 1843, till paid, in the manner following, to wit: —

" On or about the 31st day of August, 1843, James Armour died indebted to your petitioner in the sum of $ 7,510.66, with interest, as above stated, the items of which debt are set forth in the papers annexed, and marked A and B.

" That, before his death, James Armour promised in writing to pay eight per cent. per annum interest on the funds which petitioner left in his hands, that is, on the sum of $ 7,510.66, until their payment.

" That, at his death, James Armour left a will, in which he appointed Josephine H. Armour. the executrix of the said will, and dispensed with the necessity of requiring her to give security.

" That, on the 11th day of September, 1843, she filed her petition in the Probate Court of the parish of Orleans, praying the appointment of executrix of the last will of James Armour, on which said day she was appointed, and took the oath required by law ; and on the 16th day of September, 1843, she was fully authorized to do all acts as executrix of the will of James Armour, and as such took possession of all the property of said James Armour.

" That James Armour, at the time of his death, owned property in New Orleans which was appraised at $ 70,058.61, and in the parish of Jefferson he owned property which was appraised at $ 800 ; all of which came into the hands of said Mrs. Josephine H. Armour as the property of James Armour, deceased.

" That she has used for her own benefit all of said property, except as herein below stated, and has appropriated no portion thereof to the payment of the debts of James Armour.

" That among the property of the said succession of James Armour were found the following described notes : two notes of John Graham, each for $ 629.06, due on the 1st days of August, 1842 and 1843, payable to and indorsed by Buchanan, Hagand, & Co.; a note of Dougall McCall for $ 3,803.90, due 7th June, 1841 ; three notes of C. A. Warfield, for $ 619.67 each, due two, four, and six months after the 3d day of May, 1841 ; a note of J. K. Patterson for $ 550, due on 1st November, 1841 ; a check of James Pardon, Brother, & Co., on the City Bank of New Orleans, for $ 100 ; another check of the same drawers, on the Commercial Bank of New Orleans, for $ 120 ; a due bill of William Christie for $ 250 ; a draft of Francis D. Newcomb, on Rice Garland, for $ 75 ; four promissory notes of Francis D.

Newcomb, all dated 15th December, 1842, each for $ 954.76, due at six, twelve, eighteen, and twenty-four months after date. All of which several debts were due to James Armour at the time of his death, and have since become worthless and prescribed by means of the negligence of said Mrs. Armour; and all said claims bore interest at the rate of eight per cent. per annum, from their dates till paid.

"That, by means of said negligence, she has made herself liable to the creditors of the said James Armour for the amount of all said claims, $ 11,760 and interest at ten per cent. from the several dates above mentioned until payment.

"That she received and applied to her own use the family residence of James Armour, valued at $ 15,000; she sold two lots on Camp Street, near Felicity road, worth $ 600; the property in the parish of Jefferson, worth $ 800; the slaves Sampson, Betsy and child, Emily, Esther and child, Sarah, and Calvin, worth by appraisement $ 2,750; also, the household furniture and plate, carriage, &c., valued at $ 1,000, making $ 20,150; all of which she used for her own benefit, and did not pay to the creditors of James Armour any portion of the proceeds, although all said property belonged to James Armour.

"That the said Mrs. Armour owed said succession of James Armour $ 411.35, at the time of his death. She collected from the various debtors of the estate of James Armour the various sums which are stated in the annexed inventory to be due by the persons therein named, and not hereinbefore set forth, which said several debts amount to fifty thousand dollars.

"That, by receiving the property enumerated in said inventory, as the executrix of her husband's will, she became bound to use all due diligence in collecting the property of said James Armour; and also became bound to apply all the proceeds to the satisfaction of the debts of James Armour.

"That the said property was more than sufficient to pay all the debts of said James Armour, if the said Mrs. Josephine H. Armour had used due diligence in collecting and in paying over the proceeds of the property of said estate.

"That, on the 13th day of December, 1843, the said Mrs. Josephine H. Armour filed, in the Probate Court of the parish of Orleans, a provisional account of the affairs of the said succession, with which she filed a statement of all the creditors of said estate, by which it appears that James Armour owed only forty thousand dollars, to pay which Mrs. Armour had the sum of seventy-one thousand dollars.

"That, in the said list of creditors, your petitioner is named and acknowledged to be a creditor of said succession of James Armour, for the sum sued for herein.

" That, upon opposition made to the said account and list of creditors, it was adjudged that the said estate of Armour owed to your petitioner the said sum of money; as also that the debts of the succession amounted to forty thousand dollars.

" That, by means of the neglect and the misapplication of the funds of said succession, Mrs. Josephine Hurd Armour has become liable to pay the said debt to your petitioner, and also to pay damages to the amount of eight thousand dollars, and eight per cent. per annum interest from 6th June, 1843, till paid.

" The premises considered, petitioner prays that the said Josephine Hurd Armour be cited, and, after due proceedings, that she be condemned to pay your petitioner the sum of $ 7,510.66, with eight per cent. per annum interest from the 6th day of June, 1843, and damages as above stated. Petitioner prays for a trial by jury, and for general relief in the premises.

" STOCKTON & STEELE,<br>Attorneys for Plaintiff."

In March, 1848, the defendant filed the following exceptions and answer.

" And the said Penelope McGill, by her attorneys, comes into court, and, pursuant to the rules and practice in this honorable court, files now this her exception and answer to said petition.

" She excepts to said petition, and prays that the same may be dismissed without further answer, for these reasons : —

" First. The said petition, and the matters and things therein contained, are not good and sufficient in law to charge this defendant, and show no cause of action against her.

" Second. The said petition is insufficient, for the reason that all parties interested in the further settlement of said accounts therein referred to are not made parties to said petition, and the defendant cannot be called upon by each creditor of the testator to render an account of her actings and doings.

" Third. The said defendant excepts to the jurisdiction of this honorable court, sitting as a court of common law, to determine and adjudge the matters involved in said petition, and says that the same are only cognizable in chancery, and according to the form of proceedings in equity.

" And if the said exceptions should be overruled, and the said defendant be required to make further answer unto said petition, then, for answer to the same, she states : —

" That she denies, generally and specially, each and all of the allegations in said petition contained, except such as are hereinafter admitted. She admits that she was appointed the

executrix of the last will and testament of her deceased husband, James Armour; that she duly qualified as executrix as aforesaid, and took upon herself the administration of said estate.

"She further states, that she has endeavored faithfully and honestly to discharge her duties as executrix, and avers that in all things she has administered the effects of said estate according to law; that she made full, true, and perfect inventory of the property of said succession, and all proper diligence in collecting the debts of said succession; disposed of the property thereof under and in obedience to the order of court; made reports of her actings and doings, and presented formal tableaux of distribution, which were duly approved and homologated by the Probate Court of the parish of Orleans, in which such matters were properly cognizable.

"The said defendant further states, that the said succession of James Armour is and was at the death of the testator utterly insolvent, and that she is a creditor of said estate, recognized as such by the proper tribunal, and entitled to be paid before petitioner; and, although so recognized for a large amount, the assets are wholly insufficient to discharge the said claim; besides many other ordinary creditors, whose claims are equally as meritorious as the petitioner's.

"Wherefore defendant prays for trial by jury, and that judgment be rendered against petitioner; and she will ever pray, &c.

                              "W. C. MICOU,
                                D. HUNTON."

In May, 1848, the Circuit Court, after argument, sustained the exceptions, and dismissed the suit, at the plaintiff's costs. The plaintiff sued out a writ of error, and brought the case up to this court.

It was submitted upon printed arguments by *Mr. Butterworth*, for the plaintiff in error, and *Mr. Benjamin*, for the defendant in error.

The counsel for the plaintiff in error considered that the Circuit Court, by its judgment, had decided the three following points, in each of which there was alleged to be error:—1st. That no cause of action was shown in the petition; 2d. That no proper parties were made; and 3d. That the suit should have been upon the equity side of the court. But as the decision of this court turned exclusively upon the first point, that one only will be noticed.

First. We think the petition shows good cause of action: no one disputes that an executor is responsible personally to

some one for the value of the property received by him; either for its restoration in kind, or for its value, if the property or its value has been lost by his negligence whilst it remained in his possession. See 11 La. R. 22; 9 Rob. 405, 447; 9 La. R. 49; 3 Martin, N. S. 707; 7 Rob. 478.

This responsibility is directly in favor of the parties for whose benefit the property is received by the executor.

According to the law in Louisiana (and we believe everywhere else) creditors of the deceased have a right to be paid out of the funds in the hands of the executor, in preference to all other persons, whether legatees or heirs. Civil Code, Art. 1627. And they are the parties principally interested in so much of the property as is needed to satisfy their claims; consequently, the account must be rendered to them of the property received, and payment must be made to them, if it is destroyed. No one else is interested in this matter.

Now, the plaintiff has set forth that the defendant received property worth $ 71,000, and that the debts were only $ 58,000; that she has destroyed a large amount of the notes, allegations, &c., by permitting them to become prescribed and worthless; that she has converted to her own use property worth $ 20,000, and that she has collected debts due to the estate of James Armour worth $ 50,000; that she has paid no one any thing, and that all this money, $ 71,000, was received as funds with which to pay plaintiff's debt, and that there is no other fund from which it can be paid.

There is a tacit or *quasi* contract made by an executor in receiving property of a succession, that he will pay it to the parties to whom it rightfully belongs, that is, first to the creditors, then to the legatees, then to the heirs of the deceased. Plaintiff sets forth that this *quasi* contract has been violated so far as she is concerned, and she asks its enforcement; also, she says the defendant received property to the value of $ 71,000, which property was received by her to pay this very debt, and that by the negligence of the defendant it has partly become worthless, and that she has herself consumed and used the balance, and thus she has damaged the plaintiff to the whole amount of her debt. Thus she shows two good causes of action against the defendant.

The counsel for the appellee replied to this point as follows.

1st. The petition is insufficient.

As the demand is for a judgment *de bonis propriis*, the action is in the nature of a devastavit, at common law.

In order to sustain such a suit at common law, there must be judgment and execution. 1 J. J. Marshall, 362; Erving *v.* Peters, 3 Term Rep. 685.

Action may be brought upon the judgment without execution, upon a suggestion of a devastavit, but it is usual to sue out a *fieri facias*, and state the judgment, writ, and return. 2 Williams on Executors, 1224, with numerous cases cited.

The reason why the judgment without execution is sufficient is stated on the same page. " The foundation of the action is the judgment obtained against the executor, which, as there has been already occasion to show, is conclusive upon him to show that he has assets." 2 Williams, 1224.

Hence, whenever the executor is sued at common law, he must, at his peril, plead *plene administravit ;* if he fail to do so his silence is a confession of assets, and he is not permitted ever after to deny that he has sufficient assets to pay the demand. 3 Term Rep. 690; 3 Bac. Abr., tit. *Executors* (M.); Siglar *v.* Haywood, 8 Wheaton, 678.

There is no averment of judgment or execution in the petition. It is true that the plaintiff alleges that her name and debt were placed on a list of debts, and that on opposition it was adjudged "that the estate of Armour owed petitioner the said sum of money." But this is a very different thing from the judgment against an executor at common law. Such a judgment rendered simply is proof of assets; but a mere decree that the estate owed the debt is no judgment whatever against the executor, and no proof of assets on suit for devastavit.

The proceeding to which the petition alludes is peculiar to the laws of Louisiana. No creditor is permitted to bring suit for the debt of the estate, without first presenting his claim to the administrator. If the claim be acknowledged in writing by the administrator, the creditor " may present it to the judge, that it may be ranked amongst the acknowledged debts of the succession." Louisiana Code of Practice, art. 984, 985. If the administrator refuse to acknowledge the claim, then the creditor may bring suit. Art. 986. But the judgment obtained gives no priority, and the creditor can only obtain payment concurrently with the other creditors. Art. 987. And when the administrator has funds to pay, he calls all the creditors together, to receive the amounts due them respectively. Art. 988.

The judge is empowered to direct the sale of property for payment of debts, and when the representative of the estate has funds, he calls the creditors together, by publications notifying them that a dividend has been declared, and a tableau thereof filed in court, in accordance with which the funds will be distributed after approval by the judge. In other words, estates are administered in Louisiana like bankruptcies. The

executor is the assignee, and he makes payments or declares dividends only under the orders of the court.

The acknowledgment of the executor is often made, as in this instance, by filing in court a list or statement of the debts of the succession. This list approved or homologated establishes the debt as against the succession, and entitles the creditor to participate in any future dividends. Such is the judgment of the plaintiff in this suit. How different it is from the judgment necessary at common law to support the action of devastavit, is too obvious to require any argument. It is different in its effects and its legal consequences. No execution can issue upon it, and it does not imply assets in the hands of the executor. Such a judgment is therefore insufficient to support the action.

If it be pretended that the mode of proceeding in Louisiana precludes any other form of judgment, we reply that such is not the case. The rights of creditors are fully protected under our laws. If he has reason to believe that there are funds in the hands of the executor, he may call upon him by rule, and enforce its distribution. He may even demand the exhibition of his bank-books and accounts, to ascertain if he have funds. Act of 1837, Bullard & Curry's Digest; Kenner v. Duncan's Executors, 3 Mart. N. S. 563.

Such a distribution of funds in hand is a judgment in favor of each creditor for the dividend awarded to him. Morgan et al. v. Their Creditors, 4 La. R. 174; Nolte et al. v. Their Creditors, 7 Mart. N. S. 644; Preston v. Christin, 4 La. Ann. Rep. 102.

It is, moreover, a judgment of assets to the amount of the dividend, and if after such a judgment the executor fail to pay, execution issues against him de bonis propriis. Code of Practice, Art. 994 and 1057.

It is thus obvious that the laws of Louisiana do afford the same remedies as the common law against estates. If the petition contained an averment that a tableau of distribution had been filed and homologated, confessing the possession of assets, and awarding full payment to the plaintiff, then she would be in precisely the same position with a creditor having a common law judgment against an executor, and could maintain her action of devastavit. The petition contains no such allegation.

The reason of the rule applies to both systems equally. Under neither can the executor be vexed by personal pursuit, until it has been established judicially that payment cannot be obtained de bonis testatoris. Until that be ascertained, no personal action lies against the executor. All the cases cited in

13 *

the printed brief of plaintiff's counsel support this view of the laws of Louisiana.. The creditors and heirs may sue for an account, but no case can be cited in which such an action as the present has been sustained in this State, without showing a necessity for it, by proving that payment cannot be had from the goods of the succession.

The position assumed in plaintiff's brief, that the executor is responsible to creditors for the property that comes into his hands, and for his fidelity in administration, is fully admitted, but it is denied that the courts of Louisiana will entertain a suit in the nature of a devastavit, without showing that the assets of the estate have been in some form exhausted. If the allegations of the petition be true, it is obvious that this suit is both unnecessary and vexatious. If property to the amount of over $ 70,000 in value has come to the hands of the defendant to pay debts of only $ 40,000, it is apparent that she is liable for the assets as executrix. She may be forced, under the heavy penalties imposed by law, on a breach of trust, to sell the property, collect the debts, and distribute the proceeds in the form prescribed by law. The plaintiff does not pretend that she has attempted to procure payment in that form. She alleges no rule against the defendant, no tableau of distribution confessing assets, — no step whatever against her in her representative capacity, taken ineffectually. It is idle to say that the executrix retains and appropriates to her own use the property and funds of the estate. If such property and funds be in her hands, she can hold them only under the control and supervision of the court. She is compelled by law and by the duties of her office to administer and distribute, and no proof can be received that she has not done so, except a judgment of the proper court. Such a judgment any creditor aggrieved may always provoke. The petition alleges no such judgment; the suit is therefore merely vexatious, and deserves no favor.

The point is expressly decided in a case in the Louisiana Reports, and we quote the opinion at length, to show that the principles above stated are fully recognized in Louisiana.

" The plaintiff is appellant from a decree setting aside an order of sequestration which he had previously obtained. This order had been issued on his allegation that Tarbe and Nash had made a surrender of their property to their creditors, in the year 1837; that John Tarbe, one of the insolvents, had been appointed syndic of their creditors, and by the latter dispensed with giving security as such; that the defendant had illegally disposed of part of the property surrendered, by selling it at private sale, and that he was about to dispose of a quantity of other property belonging to the estate in the same illegal man-

ner, to the prejudice of plaintiff and that of all the other cred-
itors. We think that the court below did not err. The whole
proceeding appears to us irregular and unwarranted by law.
When a syndic has been legally appointed, and has taken
charge of the estate intrusted to him, no-individual creditor can
sue him for a debt, or interfere with his administration. He
may be ruled to produce his bank-book, file a tableau of dis-
tribution, and pay privileged debts, &c., but he should not be
suffered to be harassed by suits brought by individual creditors,
who allege or fear mismanagement on his part. If he has
been guilty of malfeasance or gross negligence, he can, in due
course of law, be removed from office by the creditors, and
made liable in damages in his individual capacity. 6 Martin,
N. S. 126; Laws of 1837, p. 96." — Lallande *v.* Tarbe, Syndic,
15 La. Rep. 442.

This decision was made with reference to a syndic of insol-
vents; but the mode of administration, and the rules applicable
to it, are precisely the same in estates or successions.

It is thus established that the petition shows no sufficient
ground for an action of devastavit, either according to the laws
of Louisiana or the common law.

If it were admitted that such a judgment as is required at
common law could not be obtained in the State courts, this
plaintiff could not be excused from obtaining it on that ac-
count. She is a citizen of another State, and the federal courts
are open to her. She might there have obtained judgment
and issued execution against the executrix, and the return of
the writ would have justified the present action. But she
seeks to avoid compliance with the requisites of the law,
and prefers to prosecute her suit without ascertaining by judi-
cial proceedings that such a suit is either admissible or neces-
sary. That she has chosen a course so irregular is significant
of the want of foundation for her demand.

Mr. Justice McLEAN delivered the opinion of the court.

A writ of error to the Circuit Court of the United States for
the District of Louisiana brings before us this case.

A suit was commenced by the plaintiff in the Circuit Court
against the defendant, on a claim of debt amounting to the
sum of $7,510, with interest, which James Armour, husband
of the defendant, in his lifetime owed to the plaintiff. He died,
having executed a will and made the defendant his executrix.
She filed her petition in the Probate Court at New Orleans,
and was duly authorized to act as executrix. At the decease
of her husband, it is alleged, a large amount of property came
into her hands as executrix, which she used for her own bene-

fit, and neglected to pay the debts of the estate. And it averred that a misapplication of the funds has made the defendant liable in her individual capacity, and the plaintiff prays that she may be condemned to pay the above sum, &c.

The defendant demurs to the petition, on the ground that it is not sufficient in law to charge her, for want of parties, and that the matters are only cognizable in chancery. And she answers that she has fully administered, having made a full inventory of the property of said succession, and used all proper diligence to collect the debts, and disposed of the property in obedience to the order of the court; made reports of her acts, and presented a formal tableau of distribution, which was duly approved and homologated by the Probate Court. That the estate proved to be insolvent, and that the defendant is a creditor, recognized as such by the proper tribunal, and is entitled to a preference, &c.

At the trial the suit was dismissed, at the plaintiff's costs.

This was a procedure at law under the forms adopted by Louisiana, and the question is, whether it is maintainable. The plaintiff demands a judgment *de bonis propriis*, against the defendant, no other step having been taken, or notice given, before the commencement of the present action. At common law an executor or administrator is not chargeable on a devastavit, until a judgment shall be obtained against him. He is bound to defend himself by legal pleading, and can have no relief in equity. If he suffer judgment by default, it is an admission of assets, and also if he file a plea in bar which he knows to be false. So if he pleads only the general issue, and has a verdict against him. If he plead *plene administravit*, and on this plea assets are found to be in his hands, he is liable only to the amount of such assets. 3 Bac. Abr., *Executors*, (M).

Estates by the law of Louisiana are administered under the special orders of the Probate Court. By the Code of Practice, Art. 984–988, no creditor is permitted to bring suit without first presenting his claim to the administrator. If the claim be admitted by the administrator-in writing, it is filed among the acknowledged debts of the succession. If the claim be rejected, the creditor may bring suit. But a judgment gives no priority.

By articles 1167, 1168, and 1169 of the Civil Code, the curator of a vacant succession can pay no debts, except privileged ones, until three months after the succession is opened, and then under the order of the judge. When the time for payment arrives, he must present his petition to the judge, with a statement of the debts due. And if the funds in his hands

McGill *v.* Armour.

shall be insufficient to pay the debts in full, he is required to make a tableau of the distribution and present it to the judge, with a prayer that he should be authorized to make the payments accordingly. But if the administrator or curator "neglect or refuse to file a tableau of the estate, and obtain the order of the judge to make payment, he can be compelled to do so on the demand of the interested, or in default thereof render himself responsible in his personal capacity." Kennet et al. *v.* Duncan's Executors, 3 Martin, N. S. 570.

This last procedure is as indispensable under the Louisiana law to authorize a proceeding against the executor or administrator to make him personally responsible, as an action and judgment are necessary at common law to charge him with a devastavit. And it does not appear from the petition in the case before us, that any order of the judge was obtained as required, or that any proceedings were had to compel the defendant to exhibit a tableau of distribution, by which it would appear whether the executrix had assets in her hands to pay the whole or any part of the debt of the plaintiff. This action was commenced at law, and the fact is alleged that a large amount of assets came into the possession of the defendant which have been misapplied, on which ground a personal liability is sought to be enforced against her. This the law does not authorize. An executor or administrator by the laws of Louisiana is considered, in this respect, as a syndic of an insolvent estate. In 6 Martin, N. S. 126, the court say, when a syndic has been legally appointed, and has taken charge of the estate intrusted to him, no individual creditor can sue him for a debt or interfere with his administration. He may be ruled to produce his bank-book, file a tableau of distribution, &c., but he should not be suffered to be harassed by suits brought by individual creditors, who allege or fear mismanagement on his part.

The judgment of the Circuit Court is affirmed, with costs.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this case be, and the same is hereby, affirmed, with costs.