### YONLEY v. LAVENDER et al.

FEDERAL JUDGMENTS—*When against administrators.*—Where a judgment was obtained, in a court of the United States, against an administrator in his fiduciary character—execution sued out, lands belonging to the estate sold, and marshal's deed to purchaser; on ejectment brought by purchaser: *Held,* That a litigant obtaining a judgment, in a court of the United States, against an administrator in his fiduciary character, cannot proceed directly by execution against the estate, and any sale made or deed obtained, under such process, is invalid and worthless; but, the judgment creditor, as in cases of judgments in the State courts, is remitted to the court of probate there to receive payment or his *pro rata* out of the assets of the estate.

APPEAL FROM ARKANSAS CIRCUIT COURT.

HON. HENRY B. MORSE, *Circuit Judge.*

*Watkins & Rose,* for Appellant.

On behalf of the appellant it is submitted : That the ruling of this court, in the case of *Hornor vs. Hanks,* 22 *Ark.,* 572, and upon which the court below based its decision, is incorrect, in principle, and annulled by other decisions of binding obligation.

As to the issuance and final control of the final process of the Federal courts, it is confessed that there are no acts of Congress by which any substantial element of power has ever been abdicated. The act of May 19, 1828, 4 *St.,* 281, and the act of August 1, 1842, 5 *Stat.,* 499, are the only legislation on the subject. The case of *Williams vs. Benedict,* 8 *How.,* 111, was a question of lien, and the court did not pass upon this question. Neither are the cases of *Peale vs. Phillips,* 14 *How.,* 374 ; and the *Bank of Tenn., vs. Horn,* 17 *How.,* 160, in point; the question considered being insolvency.

The decision in *Hornor vs. Hanks,* is in conflict with that of the *United States vs. Drennen, Hempstead C. C. R.,* 325, where the court held that "if a court is competent to pronounce judgment, it must be equally competent to issue execution to obtain its satisfaction ;" saying that " a court with-

out the means of executing its judgments and decrees, would be an anomaly in jurisprudence, not deserving the name of a judicial tribunal. It would be idle to adjudicate what could not be executed; and the power to pronounce necessarily implies the power of executing." The court refer to the 14th section of the judiciary act, (1 *St.*, 81,) giving to the courts of the United States power to issue all writs which may be necessary for the exercise of their respective jurisdictions, and agreeable to the *principles and usages of law.* This in 1789. The words in italics referred to the usages and principles of the law as then understood, the common law of England. *Smith's Constitutional Construction Sec.* 482. That executions by this law might and did issue against executors and administrators is a matter about which there is no controversy. Here, then, is an undeniable grant of power. The court, in the case of *Hornor vs. Hanks,* we respectfully submit, fail to show any revocation of this power.

Accordingly we believe that there is no case, except that of *Hornor vs. Hanks,* wherein it has been held in such cases that, after sale and deed made by the marshal, the proceedings could be attacked collaterally and regarded as absolutely void.

That the decision in that case is incorrect : See *Suydam vs. Broadnax,* 14 *Pet.,* 75 ; *Hyde vs. Stone,* 20 *How.,* 175 ; *Boyle vs. Zacharie,* 6 *Pet.,* 658 ; *Palmer vs. Allen,* 7 *Cranch.,* 550 ; *Wayman vs. Southard,* 10 *Wheat.,* 23 ; *Bank of the U. States vs. Halstead.* 10 *Wheat,* 53 ; *Beers vs. Houghton,* 9 *Pet.,* 362 ; *Ogden vs. Saunders,* 12 *Wheat,* 280 ; *U. States vs. Knight,* 14 *Peters,* 316 ; *McNutt vs. Bland,* 2 *How.,* 17 ; 1 *How.,* 306 ; 14 *Peters,* 74 *S. P;* *Bank of Hamilton vs. Dudley's Lessee,* 2 *Peters* 526 ; *Duncan vs. Dorst,* 1 *How.,* 306 ; *McKinn vs. Voorhees,* 7 *Cranch,* 279; *Payne vs. Hook,* 7 *Wal.,* 429 ; *Peck vs. Jenness,* 7 *How.,* 624 ; *Riggs vs. Johnson Co.,* 6 *Wal.,* 187 ; *Ableman vs. Booth,* 21 *How.,* 516 ; *Dodge vs. Wolsey,* 18 *Id.* 346 ; *Green vs. Creighton,* 23 *Id.,* 106 ; *Dupuy vs. Bemiss,* 2 *La. An.,* 513. But, furthermore, the proceeding in *Hornor vs. Hanks* was a *direct* proceeding.

The present proceeding is wholly collateral, and the appellant stands only in the light of an ordinary purchaser at such sales. The case, then, has no real application.

No court has gone further than this to uphold judicial sales when attacked collaterally. In Adamson vs. Cummins, 10 Ark., 541, which is approved in Hornor vs. Hanks, the court held that "a judgment obtained in the Circuit Court against an administrator, as such, cannot be executed until the estate is settled in the Probate Court; but an execution issued on such judgment, before it is ascertained that there are assets to pay it, is irregular, not void. If the administrator permits a sale under execution to a person who has no notice of the irregularity of its issuance, such sale will not be set aside, though the execution may be quashed." This case has been often approved, particularly in State Bank vs. Noland, 13 Ark., 304; Newton vs. State Bank, 14 Ark., 15; Byers vs. Fowler, 12 Id., 272; Newton vs. State Bank, 22 Id., 28. There is no question but what this is the law, and if the court below had followed it, the appellant must inevitably have had judgment. The two cases cited in Hornor vs. Hanks, p. 587; of Voorhees vs. Bank of the United States, 10 Pet., 439; Huff vs. Hutchinson, 14 Howard, 588, are emphatically to the same effect. These were cases at law. The court, in Hornor vs. Hanks, insisted that they had no application to that direct proceeding in equity. In this case they are exactly in point, and go along with the cases last cited.

Garland & Nash, for Appellees.

It is submitted on behalf of the appellees:

1st. That the deed from the marshal, (upon which appellant relies) fails to state the facts of advertising the lands for sale, and hence his deed is no evidence of title. That the deed should show upon its face, by way of recital, that the law of the State, regulating sales under execution, has been complied with in every particular. See Gould's Dig., p. 510-11, Sec. 65; Hardy vs. Heard et al., 15 Ark., 184. That the duty upon the

sheriff to advertise before sale, is an essential element of title, is mandatory, and not merely directory. *See* 17 *Ark.*, 106; *Ib.* 546 *et seq.*; 22 *Ark.*, 19 *et seq.*; 14 *Ark.*, 39 *et seq.* So, also, are the decisions of other States on statutes like ours. 4 *Dev.*, (*N. C.*) 549; 1 *Watts & Serg*, 519; 4 *Yeats* (*Penn.*) 213; 1 *Brev.* (*S. C.*) 226; *Ib.*, 507; 4 *Blackf.*, 228; *Hayden vs. Dunlap*, 3 *Bibb*, (*Ky.*) 216; *Webber vs. Cox*, 6 *Monroe* 110; *Sanders heirs vs. Norton*, 4 *Monroe* 467; *Allison vs. Taylor's heirs*, 3 *B. Monroe*, 366. The sheriff has no discretion as to these matters, and his deed must show he has done them. *Casey vs. Gregory*, 13 *B. Monroe* 507; *Moore vs. Brown*, 11 *Howard*, 424; cited approvingly *in* 15 *Ark. Sup.*, 187; *Kane vs. Preston*, 22 *Miss.*, 133; 12 *S. & M.*, 147; 8 *Blackf.*, 180; 2 *Caine's Reps.*, 61; 14 *Barb.*, 10; 15 *Mass.*, 329–330.

That in sales of property, in the United States Courts, the laws regulating such things in the particular States are adopted as a part of the process act of the United States Courts. *Conklin's Treatise*, *p.* 431 (*4th Ed.*); *Brightly's Digest of Federal Courts*, *p.* 659; (11 *Process and return;*) *Ib.* 410; (*Execution*, *Sec.* 1 *et seq.;*) *Hempstead C. C. Rep.*, *p.* 726; *rule* 2 (*appendix*).

2d. On the proposition of law asked by the appellant, in the court below, we submit that the judgment and execution, under which the appellant bought, being rendered in a Federal court against an administrator, the sale was invalid, and nothing was conveyed by and under it. That after obtaining judgment in that court, the parties should have gone to the Probate Court for satisfaction, and could not sue out execution and sell from the Federal court. *See* 9 *Peters*, 62; 2 *Black.*, 599; *Brightly's Dig. Federal Courts*, *pp.* 811–22; 4 *Mason*, *C. C.*, 111; *Brightly's Dig.*, 451 *et seq.*; 3 *McLean*, *C. C.*, 174; *Brightly's Dig.*, *p.* 424, *Sec.* 180, 181, 182, *et seq.* But as decisive of this question, in all its length and breadth, the court is referred to *Hornor vs. Hanks*, 22 *Ark.*, 572, *et seq.* This is just the question there decided. And this court must overrule that case before Yonley's purchase can be upheld.

GREGG, J.—The appellee sued the appellant, in ejectment, in the Arkansas Circuit Court, for *Sections* 15 *and* 16, in township six north, of range six. The defendant, Anderson, answered that the *N ½ N E qr.*, and *S ½ S E qr.* of *Section* 16 belonged to him individually, in fee, and referred to his chain of title, etc. And he and the other defendants, Lavender, Pace, and Ross, jointly answered, denying the plaintiff's title to all the property claimed; and the issues, formed by consent of all the parties, were submitted to the court, sitting as a jury, upon an agreed statement of the facts to the following effect:

"In October, 1869, William H. Halliburton, who was the administrator of Alfred B. C. DuBose, was removed and the defendant, Lavender, was duly appointed administrator *de bonis non*, and that he is still such administrator and in that capacity, as proprietor, and the other defendants as lessees under him, held all the lands sued for, except the 160 acres owned by the defendant Anderson.

"That on the 3d of March, 1869, the appellant purchased these lands, at a marshal's sale, upon execution of a judgment of the Circuit Court of the United States, for the Eastern District of Arkansas, against William H. Halliburton, as the administrator of the estate of Alfred B. C. DuBose; that the two 80 acre tracts, claimed by Anderson, had been conveyed to him, etc.; that the value of the rents of that 160 acres was $500 per year, and of the remainder of the lands, from the 3d of March, 1869, to the time of trial, was $4325 00."

The proceedings and judgment in the United States Circuit Court, in favor of Auguste Gautier against said Halliburton, as such administrator, upon which said execution had been issued, and the execution and marshall's deed to the appellant, were all referred to and taken as evidence.

It is unnecessary to refer to the facts showing Anderson's title to the said 160 acres, as that is not urged here by the appellant.

The appellant moved the court below to declare two propositions of law.

" First : That said plaintiff, by his said purchase thereof at the marshal's sale, and the deed of conveyance therefor by the marshal to him, in execution of the judgment of said Circuit Court of the United States, set forth in the agreed statement of facts, became and is entitled by law to recover, in this action, the possession of so much of the lands and premises in controversy as were held and occupied, at the time of the commencement of this suit, by the defendants Lavender, Ross, and Pace, being all of said lands and premises, except the two eighty-acre tracts claimed by said Anderson and described in his answer, together with damages for the detention thereof, according to the value of the rents of the same, as agreed on.'"

The second proposition related to the 160 acres, to which Anderson has set up title.

The appellees asked the court, upon the agreed statement of facts, to declare the converse of the appellant's proposition to be the law of this case, as applicable to the facts, which the court did, and the appellant excepted.

The court found for the appellees and rendered judgment that they go hence and recover their costs from the appellant, from which ruling and judgment he appealed to this court.

The main proposition is to determine whether or not a litigant, who obtains judgment in a court of the United States, against an administrator in his fiduciary character, can proceed directly by execution against the estate, or whether, as in case of judgments in the State courts, he is remitted to the court of probate, there to receive payment or his pro rata out of the assets of the estate.

The appellees insist that the marshal's deed to Yonley fails to sufficiently recite the publication of notice of the sale. The facts, constituting notice, are not detailed as fully and accurately as they might have been, yet we are inclined to the opinion that publication of notice sufficiently appears, and we will direct our attention to the main proposition.

The spirit of our institutions is to secure the full and equal rights of all of the citizens of the government, and to avoid

prejudice or local influence, our political system is so organized that the complainant, who is remote from the forum, is, by the general government, furnished a court, the officers of which are not supposed to be within local influence. But, in this case, it is insisted the creditor, Gautier, claimed more than equal privileges with the inhabitants of the State, who alike were creditors of the deceased, and that he sought to subject the whole landed estate to the payment of his demand, while others had to appear before a legal trustee and accept a *pro rata* of the assets.

Appellant's counsel concede that in the case of *Hornor vs. Hanks*, 22 *Ark.* 572, this court passed upon this question; but we are asked to review that case, and to overrule the same, insomuch that it holds that the Federal Courts have not a discretionary power to enforce their judgments by direct execution against lands and tenements of a decedent in the hands of his representative for administration.

DuBose died before Gautier took any steps to enforce payment of his demand; the validity of that demand depended upon the laws when made, and whatever these laws were, they entered into and formed a part of the contract. When made, the creditor had a right to sue his debtor (upon the maturity of his demand,) and by judgment and execution compel payment out of his effects; but if the debtor died before judgment, he had no right to enforce his demand by execution, but he was required to authenticate and file his demand and accept payment or a *pro rata* from a trustee, into whose hands the estate passed for settlement with all creditors. And the law declared the manner of prosecuting claims by approval or by the judgment of a competent court, and this being the creditor's right, and his only right, and rights being reciprocal under the law, could he change that right by selecting a national forum, and deprive other creditors of equal privileges? Would this not be more of an invasion of a right than a regulation of the remedy?

If this is no answer to the argument that it is within the

power of Congress to allow the Federal courts to enforce their judgments, without regard to State laws or the interests of local creditors, it may serve to show what was the purpose and intention of Congress in not so declaring by law, and of the interpretation of congressional will by the courts, in so long observing the laws and practices of the States, in matters not made obligatory upon them by act of Congress.

Our whole system, State and national, is designed to work in harmony, to administer justice uniformly, and without a contest among the courts as to the right to sit in judgment or enforce their respective mandates in a proper manner. And if our State and national systems, as a whole, have not such uniformity, either by well defined limits, over which the one court cannot intrench upon the other, or if concurrent in power and right, a well understood practice that a subject matter once in hand, by either court, shall be there fully adjusted without interference by any other tribunal, confusion, a clash of power and uncertainty of result, would necessarily follow.

The system must be harmonious, otherwise, in cases like the one at bar, there would be a scramble between local and non-resident creditors as to who should first exhaust a decedent's assets; and if the State enactments should give greater facilities than the Federal tribunals, he, whose circumstances forced him into the courts of the United States, would lose all; and on the other hand, if the State administration should be proceeded in with that care and deliberation calculated to realize the very largest sums for the beneficiaries, he, whose accidental situation give him the privilege of the Federal courts, would press his demand, and, in haste, sweep the whole estate from other claimants equally meritorious. And should the race be equal, who is to determine between the respective officers, as to the right to hold and dispose of the effects subject to seizure?

By the laws of the State, the whole property and effects of DuBose had been seized; they were in the custody of the law

and being marshaled and disposed of for the benefit of credi-
tors and distributees; was it then proper to arrest these effects,
take them from a trustee, created by a competent State
court, and expose them to sale for the benefit of a single
creditor?

These lands were assets in the administrator's hands to pay
debts. If not, it would only leave the appellant in the worse
condition, because Gautier did not bring the heir or any one
interested before the court to obtain a judgment against
DuBose's estate, and, of course, such judgment could not be
enforced against these lands, if they were not properly repre-
sented by the administrator. All parties recognized the
administrator as the trustee of the estate; Gautier claimed
nothing of Halliburton or Lavender, as individuals; he
claimed against them as appointees of the State court. All
the authority he had, for bringing and maintaining his suit,
was derived from his recognition of the appointment under
State law, and if State law was not competent to confer power
and obligation upon such trustee, Gautier had no right to sue
him as such; and if the State law was valid to constitute such
trusteeship, (and such validity is admitted) is not State power
competent to prescribe the manner in which such assets shall
be distributed? And if the Federal courts, (which have no
Federal authority for the administration of estates) will recog-
nize the State law in the appointment of an administrator
and his responsibility to answer for the estate, will they not
also recognize State authority in the distribution of the estate?
In other words, if the rules and practice of the Federal courts
require them to hold the State laws binding for one purpose,
in administration, will they not be binding for all purposes
connected therewith? If Gautier's rights in recovering judg-
ment are determined by State law, are not his rights, in satis-
fying that judgment, measured by the same rule?

Whether or not this execution should issue directly against
the estate, is not a mere regulation of the remedy, but it very
materially changes the rights of those interested in DuBose's

·estate; it places Gautier's claim above a limitation that gov-·erns all others.

In the case of *Ross et al. vs. Duval et al.*, 13 *Pet.*, 60, it was said, the act of 1789, so far as process was concerned, related to the laws then in force only, and the 34th *section* had no application to the conduct of an officer in the service of an execution. In Virginia there was no rule of court regulating executions, but upon a State act, which disallowed ·executions after a certain date, although a regulation of exe-·cution, the Court held that it amounted to a limitation and, under the 34th section, was a rule of decision for the Court. The Court further said: "In giving effect to this statute, no principle is impugned which is laid down in the case of *Wagram vs. Southard*; the State law, which the court held, in that case, not to apply in Federal Courts, was a law that regulated proceedings on executions; it was a process act, and not an act of limitation."

In the case of the *Bank of Tennessee, etc. vs. Horn*, the Bank had a suit pending, and Carney, the debtor, transferred his property, by an order of the proper State Court for the benefit of creditors, under the State insolvent laws;. the Bank obtained judgment after the cession had been accepted and .a syndic appointed by the creditors. The Bank took execution, sold the lots and bought them in and took possession, and Horn, who had purchased under the syndic, brought ·ejectment, and by a judgment of the United States Court ·ejected the Bank, which judgment was, on appeal, affirmed. 17 *How.*, 160.

In this case, the lots were placed in the hands of a trustee, for the benefit of creditors, and they were held not subject to ·execution upon a judgment in the Federal Court. See also *Magill vs. Amour*, 11 *How.*, 142.

State acts, subsequent to 1789, which merely regulate pro-·cess, are not binding upon the Federal Courts, unless adopted by them, but with the laws of the States, operating upon the ·contract of parties, it is different.

*Section* 34, of the act of Congress of September 24, 1789, enacts " that the laws of the several States, except where the Constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as the rules of decision in trials at common law, in Courts of the United States, in cases where they apply.

By this section of the acts of Congress, State laws are the rules of decision ; a litigant's rights are determined by the local laws and, in the case at bar, the local laws allowed no execution ; in case of a debtor's death, his death was a limitation upon all executions; the assets of his estate were seized in trust for all creditors, publicly sold and distributed *pro rata* upon claims of the same grade, and the law of the place, when and where the contract was made, limited the creditor to this satisfaction, and consequently this was the extent of his rights under such contract, a limitation upon his demand, and not a mere regulation of process.

And this construction, we think, not inconsistent with the rulings of the Supreme Court of the United States in the cases referred to. That of *Sugdon vs. Bodnax*, held that a State law could not deprive a Federal Court of jurisdiction to try a case wherein the plaintiff was a non-resident.

In the case at bar, no one questions the right of the Federal Court to try the matter in controversy, and determine the rights of the parties.

In the *U. S. Bank vs. Halstead*, 10 *Wheat*, 21, it was held, simply, that the Federal Courts were not bound to follow the process acts of the States, subsequent to 1789, and to the same effect is the ruling in the case of *Wagram vs. Southard, and Riggs vs. Johnson County*, 6 *Wal.*, 187.

The argument, of the appellant, that the United States Circuit Court has made no rule adopting the practice of this State, and that the court has discretionary power to issue process in its own favor, and having exercised that discretion, its power cannot be questioned, would be sustained by these cases, if the question as to the form of process was the real

issue in this case; but we think, like the case of *Ross et al. vs. Duval et al.*, *ubi. sup.*, it involves largely the right of recovery, and that right, though interwoven with the process of the court, is nevertheless the rule of decision, and the court could not legitimately, under an assumption of regulating its own process, deprive parties of the right they had under the law of the contract. Rights are not unfrequently prescribed by declaring what remedy a party may have. Statutes of limitation only effect or cut off the remedy, yet State limitation acts are laws in Federal Courts. *McClung vs. Sullivan*, 3 *Pet.*, 277.

Stress is placed upon the case of *Payne vs. Hook*, 7 *Wal.*, 429: We see but little in this case not contained in some of the cases already referred to. In this, it is held that the laws of Missouri, divesting her courts of equity jurisdiction in cases of administration of estates, and conferring exclusive jurisdiction on Courts of Probate, could not divest the Federal Courts of their chancery jurisdiction in such cases; that they have, under the United States Constitution, an equitable jurisdiction similar to the High Court of Chancery of England, and that that jurisdiction cannot be defeated by State laws, and that "It is well settled that a Court of Chancery, as an incident to its power to enforce trusts and make those holding a fiduciary relation account, has jurisdiction to compel executors and administrators to account and distribute the assets in their hands."

The courts retain their jurisdiction intact, without regard to State enactments, yet they determine the controversies, and award the parties their rights as they exist under the State laws, wherein the contract was made, and in the case of *Payne vs. Hook*, we see no intimation that Payne was to be adjudged any greater rights in the estate than any local creditor, or that the assets should be executed, in his favor, in a manner different from that in which they were to be disposed of for the benefit of all other creditors. The court took jurisdiction over Hook as the administrator, not to

destroy or divest the trust estate in him, but to compel him to faithfully carry out that trust and award Payne the rights to which he was lawfully entitled under the trust the law had reposed in him.

In the case of *Green vs. the Lessee of Neal*, 6 *Pet.*, 297, the Supreme Court of the United States, after quoting many former decisions, say : "Quotations might be multiplied, but the above will show that this court has uniformly adopted the decisions of the State tribunals respectively, in the construction of their statutes; that this has been done, as a matter of principle, in all cases where the decision of the State court has become a rule of property. In a great majority of cases, brought before the Federal tribunals, they are called on to enforce the laws of the States; the rights of parties are determined under those laws, and it would be a strange perversion of principle if the judicial exposition of those laws, by the State tribunal, should be disregarded," etc. See also *Jackson vs. Chew*, 12 *Wheat*, 153.

In *Mutual Insurance Society vs. Watts*, 1 *Wheat* 270, the Supreme Court said : "This court uniformly acts under the influence of a desire to conform its decisions to those of the State courts over their local laws," etc. See also *McKeen vs. Delancey's Lessee*, 5 *Cranch*, 32; and *Shelby vs. Grey*, 11 *Wheat*, 361; *Hornor vs. Hanks*, 22 *Ark.*, 572; and cases there cited. In 11 *Wheat*, 367, it is said : "The statute laws of the State must furnish the rule of decision to the Federal Courts, as far as they comport with the Constitution of the United States, in all cases arising within the respective States," etc.

It is clear that State laws cannot destroy or impair the jurisdiction of the Federal Courts to try suits between all proper parties, and that the Federal Courts are not bound to follow the mere Practice Acts of the States, subsequent to 1789. But the laws of the States, prescribing or limiting the rights of parties to a controversy, are the rules by which the Federal Courts will determine and enforce individual rights, and that the statutes of Arkansas, requiring such

creditor to file his demand in the court of probate, and accept an equitable allowance with all other creditors, is a law limiting his rights and not merely a rule of practice for the courts. And by such law Gautier, in case of DuBose's death, took nothing, by his contract, greater than his right to enforce his demand against the estate upon an equality with other claims of the same grade, and to receive his pay or a pro rata from an administrator or executor, into whose hands the estate passed in trust for the benefit of creditors and heirs or legatees. And as the process, under which the appellant purchased, showed fully upon its face that it was without force and authority of law, he should have taken notice that a purchase and deed thereunder was invalid and worthless.

The judgment of the court below is in all things affirmed.